UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT W. CRENSHAW,

              Plaintiff,

vs.                       Case No.  2:03-cv-134-FtM-29SPC

ROBERT LISTER; EMMITT MERRITT, RICK
CHANDLER, WILLIAM CLEMENT, in his
individual capacity, JOHN DAVENPORT,
in his official capacity, FAWCETT
HOSPITAL, Charlotte County, Florida,
SANDY OLIVO, STEVE WINDISH,

              Defendants.

_____

**OPINION AND ORDER**

_____This matter comes before the Court on defendant Fawcett Memorial Hospital's Motion to Dismiss (Doc. #207) filed on August 6, 2007.  Plaintiff filed a Response (Doc. #209) on August 24, 2007.  Also before the Court is defendants Lister, Merritt, Sheriff Davenport and Savage's Motion to Strike Plaintiff's Second Amended Complaint or in the Alternative, Motion for More Definite Statement (Doc. #208) filed on August 9, 2007.  Plaintiff filed a Response (Doc. #210) on August 29, 2007.

As a preliminary matter, the Court finds that the Second Amended Complaint was timely filed.  The Court's June 25, 2007 Opinion and Order (Doc. #203) granted plaintiff thirty days to file a Second Amended Complaint.  While the Second Amended Complaint (Doc. #206) was filed on July 27, 2007, it was submitted to prison

officials on or before the thirtieth day and therefore timely filed.  (Docs. ## 209, p. 1; 210, p. 2.)

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 127 S. Ct. 2197 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)(citing FED. R. CIV. P. 8).  See also Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citations omitted); Erickson v. Pardus, 2007 WL at *3; Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S. Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Id.

at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  Id.  Dismissal is warranted under FED. R. CIV. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992).

**II.**

On July 27, 2007, plaintiff, an inmate currently incarcerated in the Florida penal system and proceeding *pro se*, filed a six-count[1] amended civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. #206)(the "Second Amended Complaint").  The Second Amended Complaint relates to events that occurred during and subsequent to plaintiff's arrest, but prior to his conviction.  Plaintiff names, *inter alia*, defendant Robert Lister, Emitt Merritt and Rick Chandler, all of whom are Charlotte County Deputy Sheriffs, Charlotte County Sergeant Michael Savage, Charlotte County Sheriff Davenport, and Fawcett Memorial Hospital (hereinafter 'Fawcett Memorial').

The Second Amended Complaint recounts that on November 28, 2001, after an armed robbery incident, plaintiff was attacked and bitten thirty-one times by a police canine, under the control of

---

[1]The Court notes that the Second Amended Complaint contains two separate counts each entitled "Count Three" and therefore, contains a total of six counts.

defendant Lister, in his attempt to surrender to the local authorities and as a result suffered injuries. (Doc. #206, p. 3.) Defendant Merritt witnessed the attack but did not intervene. (Id. at p. 15.)

Due to his injuries, plaintiff was transported to Fawcett Memorial. Upon arrival, plaintiff's multiple injuries were photographed, but he was only treated for injuries to his legs. Plaintiff further alleges that "Fawcett Memorial Hospital is a primary care facility under contract with the Charlotte County Sheriff's Office [(CCSO)]. As such Fawcett, is therefore an agent of the Sheriff's Department for the tasks of Medical Care." (Id. at p. 33.) The Second Amended Complaint goes on to allege that Fawcett Memorial was aware that plaintiff was not completely ambulatory and yet it did not prescribe any medication or prescribe crutches or a wheelchair. (Id. at p. 34.)

Upon arriving at the police station, plaintiff was interrogated by defendant Chandler. (Id. at p. 13.) During questioning, defendant Chandler punched the plaintiff in the mouth causing plaintiff to bleed. Plaintiff asserts that defendant Chandler violated the CCSO's Use of Force policy.

As a result of his numerous injuries, plaintiff filed a complaint with internal affairs. (Id. at p. 11.) Defendant Sergeant Savage was placed in charge of the investigation and met with plaintiff on January 16, 2001 at the Charlotte County jail.

-4-

During the meeting, Sergeant Savage informed plaintiff that in light of the pending criminal charges he would not take a statement but would examine the arrest file and paperwork associated with the case.   On April 22, 2002, Sergeant Savage found no police misconduct.   Plaintiff alleges that the investigation violated the CCSO's policies and procedures.   (Doc. #206, p. 12.)

Plaintiff's six-count Second Amended Complaint asserts that all named defendants violated his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights.   Additional facts are set forth below as needed.

## III.

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."   42 U.S.C. § 1983.   To establish a claim under § 1983, plaintiff must prove that (1) defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law.   Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).   Plaintiff also must prove an affirmative causal connection between defendant's conduct and the constitutional deprivation.   Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).

As a preliminary matter, the Court notes that it has previously ruled that plaintiff could not sustain a cause of action under the Fifth or Eighth Amendments. (Doc. #206, pp. 7, 10.) Nothing has changed.  Therefore, the Court will strike all references to the Fifth and Eighth Amendments.  As for plaintiff's Sixth Amendment claims, the Court finds that plaintiff has not pled any facts as to any of the defendants that relate to any rights guaranteed by the Sixth Amendment.[2]  Plaintiff merely states that the defendants' actions violated his Sixth Amendment rights. Therefore the Court will strike all references to the Sixth Amendment.

**A.   Defendant Fawcett Hospital's Motion to Dismiss (Doc. #207)**

Defendant Fawcett Memorial argues that: (1) plaintiff has failed to properly allege that Fawcett Memorial was acting under the color of state law; (2) plaintiff has not alleged that a custom, policy or procedure was the moving force behind the alleged constitutional violations, and (3) plaintiff has not adequately pled facts showing that his medical needs were serious or that the

---

[2]The Sixth Amendment protects the rights of the accused in criminal prosecutions.  It provides that:

> the right to a speedy and public trial, by an impartial jury . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

U.S. CONST. amend. VI.

hospital's conduct "shocks the conscience."

A § 1983 claim requires plaintiff to show that the conduct was committed by a person acting under the color of state law at the relevant time.  Loren v. Sasser, 309 F.3d 1296, 1303 (11th Cir. 2002), cert. denied, 538 U.S. 1057 (2003).  "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."  Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276-1277 (11th Cir. 2003)(quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)(citations omitted)).  A private person, however, may be viewed as a state actor under certain circumstances.  Focus on Family, 344 F.3d at 1277 (recognizing three tests used to determine whether person was state actor).  Action is considered to be under color of state law if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly attributed to the State.  Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001).  The Supreme Court has stated that "[w]hat is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity."  Brentwood Acad., 531 U.S. at 295.  The Supreme Court further noted that "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, . . ."  Id.

Rather, the Supreme Court's prior decisions have "identified a host of facts that can bear on the fairness of such an attribution." Id. at 296.   The determination of whether there is action under color of state law is a "necessarily fact-bound inquiry."   Id. at 298 (citation omitted).

Fawcett Memorial argues that even if there is a contractual relationship between the CCSO and the hospital, that is insufficient to establish that the hospital is a state actor. Fawcett Memorial argues that under Patrick v. Floyd Medical Center, 201 F.3d 1313 (11th Cir. 2000), plaintiff must show that the hospital and the CCSO were intertwined in a symbiotic relationship. The mere existence of contractual relationship is insufficient. (Doc. #207, pp. 9-10.)

At this stage of the proceedings, the Court views all allegations in the Second Amended Complaint as true.   The Court finds that the alleged contractual relationship between Fawcett Memorial and the Charlotte County Sheriff's Office is sufficient to allege action under color of state law at the pleading stage.   See Farrow v. West, 320 F.3d 1235, 1239 n.3 (11th Cir. 2003)(private physician under contract with state to provide medical care to inmate acts under color of state law for § 1983 purposes); Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985)(collecting cases finding state action is present when a private entity takes on a traditionally governmental role).

Patrick was decided at the summary judgment stage of the proceedings, and hence the court in that case possessed more information regarding the relationship between the hospital and the county.   In the present case, the record contains no evidence regarding the terms of the contract and therefore the Court cannot make an assessment as to whether the relationship between Fawcett Memorial and the CCSO is such that it renders the hospital a state actor.  Therefore, the Court finds that plaintiff has sufficiently pled that Fawcett Memorial acted under color of state law.

Fawcett Memorial also asserts that the Second Amended Complaint must be dismissed because it fails to allege a violation of custom or policy which was the moving force behind plaintiff's constitutional deprivations.   (Doc. #207, p. 12.)   The Court agrees.  Fawcett Memorial in essence seeks to be treated as a governmental entity in this regard.  Monell[3] has been extended to private corporations, Harvey v. Harvey, 949 F.2d 1127, 1129 (11th Cir. 1992), and therefore Fawcett Memorial cannot be held liable under a theory of respondent superior.  Ancata, 769 F.2d at 705 n.8.  Plaintiff has failed to allege a violation of a policy, custom, or procedure that was the moving force behind the alleged constitutional violation.   The only allegations in the Second Amended Complaint are that Fawcett Memorial's policies were violated, but not that the policies were the actual moving force

_____

[3]Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

behind the plaintiff's injuries.  See <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)(a state actor can only be liable if the execution of the policy or custom inflicts the injury.)  The Court notes that mere negligence or malpractice does not rise to the level of a constitutional violation.  See <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991).  Defendant's actions must "shock the conscience" <u>Lumley v. City of Dade City, Fla.</u>, 327 F.3d 1186, 1196 (11th Cir. 2003); <u>see also</u> <u>Redd v. Conway</u>, 160 Fed. Appx. 858 (11th Cir. 2005).  Therefore, Fawcett Memorial's Motion to Dismiss is granted.  Because this pleading defect may be corrected, the Court will allow plaintiff one more opportunity to plead a cause of action.

**B.    Defendants Lister, Merritt, Sheriff Davenport and Savage's Motion to Strike Plaintiff's Second Amended Complaint or in the Alternative, Motion for More Definite Statement (Doc. #208)**

Defendants Lister, Merritt, Sheriff Davenport and Savage (hereinafter 'defendants') assert that plaintiff should file a more definite statement because plaintiff's Second Amended Complaint violates Federal Rules of Civil Procedure 8 and 10.  (Doc. #208, p. 6.)  Specifically, the Second Amended Complaint is "excessively wordy littered with irrelevancies" and contradictory statements. (Doc. #208, pp. 4-5.)  Plaintiff counters that he has adequately articulated a claim against each of the defendants, and that defendants are only attempting to prolong the resolution of the instant case.  (Doc. #210, pp. 2-3.)  Plaintiff states that, if

necessary, he is willing to file a Third Amended Complaint.  (<u>Id.</u> at p. 3.)

### 1. Excessive Use of Force (Counts I (Lister), III (Chandler)and III (Merritt))

Count I of the Second Amended Complaint alleges that defendant Lister used excessive force in apprehending plaintiff by allowing his police dog to attack and bite plaintiff thirty-one times. Plaintiff asserts that at the time of the canine attack he was in the process of surrendering.  (Doc. #206, ¶¶ 25, 27.)  Count III alleges that while interrogating plaintiff, defendant Chandler punched plaintiff in the mouth.  At all times during interrogation, plaintiff was handcuffed.  (<u>Id.</u> at ¶¶ 53, 54.)  Count III also asserts that defendant Merritt failed to intervene and prevent the canine attack.  (<u>Id.</u> at ¶¶ 59-60, 64.)

### (a) Source of Constitutional Right:

The Court's first step is to identify the source of the constitutional right to be free of excessive force.  Defendants argue that the excessive force claim must be analyzed under the Fourteenth Amendment substantive due process standard.  (Doc. #208, pg. 5.)  Plaintiff cites the Fourth and Fourteenth Amendments as the basis for his excessive force counts.  (Doc. #206, ¶¶ 43, 57.)

The Supreme Court has rejected the "notion that all excessive force claims brought under § 1983 are governed by a single generic standard." <u>Graham v. Connor</u>, 490 U.S. 386, 393 (1989).  Rather, "[i]n addressing an excessive force claim brought under § 1983,

analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham, 490 U.S. at 394 (citation omitted).  Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government conduct, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the claims.  Graham, 490 U.S. at 395.  While noting that most excessive force claims will be analyzed under either the Fourth Amendment or the Eighth Amendment, Graham does not limit excessive force claims to one or the other Amendment.   Rather, "Graham simply requires that if a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  United States v. Lanier, 520 U.S. 259, 272 n.7 (1997).

Therefore, different constitutional rights will be at issue in excessive force claims arising in different factual contexts.  An excessive force claim in the context of a pre-arrest, non-seizure police contact is analyzed under the Fourteenth Amendment substantive due process standard even after Graham.  Wilson v. Northcutt, 987 F.2d 719, 721-22 (11th Cir. 1993); Carr v. Tatangelo, 338 F.3d 1259, 1271 (11th Cir. 2003).  However, "all" claims that law enforcement officers have used excessive force in

the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment, not under a substantive due process approach. <u>Graham</u>, 490 U.S. at 395. Thus, substantive due process analysis is inappropriate in a case if plaintiff's claim is "covered by" the Fourth Amendment. <u>City of Sacramento v. Lewis</u>, 523 U.S. 833, 843 (1998). A pretrial detainee's claim of excessive force, however, is analyzed under the substantive due process provision of the Fourteenth Amendment. <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005). A claim of excessive force by a convicted prisoner is analyzed under the Eighth Amendment. <u>Whitley v. Albers</u>, 475 U.S. 312, 318-26 (1986).

In this case, plaintiff was injured on two separate occasions. First, when he was attempting to surrender, and then during his interrogation. Plaintiff had clearly been seized within the meaning of the Fourth Amendment by virtue of his arrest, but his status had evolved into that of an arrestee in custody while being interrogated. The Eleventh Circuit has analyzed such "custody" situations under different constitutional amendments. In <u>Vinyard v. Wilson</u>, 311 F.3d 1340 (11th Cir. 2002), the Court analyzed an excessive force claim during arrestee's ride to the jail under the Fourth Amendment. In <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1154 n.1 (11th Cir. 2005), the Court rejected a Fourteenth Amendment analysis in favor of a Fourth Amendment analysis where a suspect was "in custody" by virtue of being surrounded by officers.

-13-

On the other hand, in <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996), a suspect was arrested and transported in the back of a police car in a position which led to his asphyxiation. The Eleventh Circuit stated that excessive force claims "involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause . . ." <u>See also</u> <u>Redd v. R.L. Conway</u>, 160 Fed. Appx. 858, 860 (11th Cir. 2005)(applying Fourteenth Amendment substantive due process analysis to claims of excessive force during arrest and booking process). In <u>Vineyard v. County of Murray</u>, 990 F.2d 1207, 1211 (11th Cir. 1993), the Court did not decide whether force used in a hospital stop on suspect's way to jail was governed by the Fourth or Fourteenth Amendment, finding no violation under either amendment.

The Court will therefore analyze plaintiff's excessive force claim under both the Fourth Amendment and the Fourteenth. While the Fourth and Fourteenth Amendment standards are similar, plaintiff has a higher burden when the Fourteenth Amendment is involved. <u>Carr</u>, 338 F.3d at 1271-72.

### (b) Legal Standards:

Under a Fourth Amendment standard, the issue is whether the officer's conduct was objectively reasonable in light of the facts confronting the officer. <u>Graham</u>, 490 U.S. at 396-97. The use of force must be judged on a case-by-case basis from the perspective

of a reasonable officer on the scene, keeping in mind that the right to make an arrest carries with it the right to use some degree of physical force or the threat of force.  This requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.  This in turn requires a court to evaluate the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting or attempting to flee, the need for the application of force, the extent of the injury inflicted, and whether the force used was reasonably proportionate to the need for the force.  See Beshers v. Harrison, 495 F.3d 1260, 1266-68 (11th Cir. 2007); Vinyard, 311 F.3d at 1347.

Under the Fourteenth Amendment, the standard is the same as that employed under the Eighth Amendment.  Bozeman, 422 F.3d at 1271. To prevail on a substantive due process excessive force claim, plaintiff must prove that defendant's actions "shocks the conscience," and mere negligence is not enough.  Lumley v. City of Dade City, Fla., 327 F.3d 1186, 1196 (11th Cir. 2003).  To determine if an application of force was excessive, the Court considers a variety of factors, including: the need for the force and the amount of force used, the extent of the injury inflicted, and whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

the purpose of causing harm.   <u>Carr</u>, 338 F.3d at 1271-72.   This standard does not establish a bright line that would readily alert officers to a violation, and therefore qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in defendant's place to conclude the force was unlawful.   <u>Id.</u>

### 1.   **Deputy Sheriff Lister (Count I)**

The facts known to defendant Lister at the time of the use of force were that plaintiff was suspected of committing armed robbery and plaintiff was in the process of fleeing, initially by car then by foot through a wooded area.   Lister never lost sight of plaintiff.   Upon becoming aware of the presence of a police dog, plaintiff informed Lister that he wished to surrender and relayed his position. (Doc. #206, ¶¶ 8, 10-11, 27.)   The Court recognizes that this version of the events is only from plaintiff's perspective and is likely to be disputed.   However, at this stage of the proceedings, the Court is required to accept all factual allegations in the Second Amended Complaint as true.

Under these facts the Court finds that plaintiff's excessive force claim against defendant Lister survives the motion to dismiss.   Plaintiff had relayed to Lister his intent to surrender as well as his location, and therefore no longer posed a flight risk at the time of the release of the canine.   Plaintiff suffered significant injury in being bitten thirty-one times.   Therefore,

plaintiff has pled sufficient facts to establish either a Fourth Amendment or a Fourteenth Amendment excessive force claim against Deputy Sheriff Lister.

### 2.    Deputy Sheriff Chandler (Count III)

Defendant Chandler was one of the officers responsible for interrogating plaintiff at the police station.  At all times during the interrogation, plaintiff's hands were handcuffed behind his back.  In response to a derogatory remark by plaintiff, Deputy Sheriff Chandler punched plaintiff in the mouth.  (Doc. #206, ¶53.) Therefore, plaintiff has pled sufficient facts to establish either a Fourth Amendment or a Fourteenth Amendment excessive force claim against Deputy Sheriff Lister.

### 3.    Deputy Sheriff Merritt (Count III)

Count III alleges that defendant Merritt failed to follow procedures by "refusing or failing to stop Deputy Robert Lister from using the canine dog as a[n] attack weapon against plaintiff," and failing to report the circumstances of the attack as required by department policy.  (Doc. #206, ¶¶ 59, 61)  Plaintiff further alleges that defendant Merritt failed to intervene and stop Deputy Sheriff Lister from using excessive force. (Id. at ¶64.)

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir.

2007)(quotation omitted); <u>Priester v. City of Riviera Beach, Fla.</u>, 208 F.3d 919, 927 (11th Cir. 2000). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." <u>Ensley v. Soper</u>, 142 F.3d 1402, 1407 (11th Cir. 1998).

The Court finds that plaintiff has alleged sufficient facts to establish either a Fourth Amendment or a Fourteenth Amendment excessive force claim against Deputy Sheriff Merritt. Plaintiff alleged that defendant Merritt was in a position to intervene and instead chose to stand by while defendant Lister's police dog bit plaintiff thirty-one times causing severe injuries. Therefore, the motion to dismiss is denied as to defendant Merritt.

### 2.   Count II - Sergeant Michael Savage - Internal Affairs Investigator

Count II alleges that Sergeant Savage failed to follow departmental policies relating internal affairs investigations. Specifically, defendant Savage failed to: (1) conduct proper interviews; (2) conduct an adequate investigation; and (3) prepare the requisite report. (Doc. #206, ¶¶ 44, 48, 49.) Plaintiff asserts that these failure resulted in a deprivation of plaintiff's Fourth Amendment and Fourteenth Amendment rights. As the Court stated earlier, the violation of a departmental policy alone cannot form the basis of a constitutional claim. Plaintiff does not allege that the policy was the moving force behind the constitutional violation. Furthermore, the Eleventh Circuit has ruled that there is no constitutional right to an investigation of

an excessive force complaint.  See Vinyard v. Wilson, 311 F.3d
1340, 1356 (11th Cir. 2002).  Therefore, the motion to dismiss is
granted as to Count II.

### 3.    Count IV – Charlotte County Sheriff's Office – Inadequate Supervision, Custom, Policy, and Procedures

Count IV asserts a claim against the Charlotte County
Sheriff's Office, which is not a legal entity subject to suit under
§ 1983.  In Florida, a county Sheriff in his official capacity is
the proper defendant rather than the County Sheriff's Office.  Dean
v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992).  Therefore the
proper party is Sheriff Davenport.  The Court will construe Count
IV as a claim against Sheriff Davenport in his official capacity
and strike the Charlotte County Sheriff's Office as a defendant.

Count IV is composed of thirty-eight paragraphs asserting in
essence three separate claims against Sheriff Davenport: (1) that
a variety of office policies were violated; (2) the Sheriff's
office has a policy of not following certain policies; and (3)
failure to train.  (Doc. #206, pp. 17-30.)

Under § 1983, a governmental entity may not be held liable
under a theory of respondeat superior, but instead may only be held
liable when its "official policy" causes a constitutional
violation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694
(1978).  Plaintiff can establish the requisite "official policy" in
one of two ways: (1) identifying an officially promulgated policy,
or (2) identifying an unofficial custom or practice shown through

the repeated acts of the final policymaker of the entity.  Grech v. Clayton County, Ga., 335 F.3d 1326, 1320-30 (11th Cir. 2003). Plaintiff must identify the policy or custom which caused his injury so that liability will not be based upon an isolated incident, McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004)(citations omitted), and the policy or custom must be the moving force of the constitutional violation.  Grech, 335 F.3d at 1330.  See also Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

The Court finds that, at this stage of the proceedings, Count IV of the Second Amended Complaint adequately states a cause of action under the Fourth and Fourteenth Amendments against the sheriff in his official capacity.  Plaintiff has identified numerous policies and practices by the sheriff's office which he alleges were the moving force behind his injuries.

The sheriff is not automatically liable under § 1983 even if he inadequately trained or supervised his officers and those officers violated plaintiff constitutional rights.  See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).  To establish a claim against the sheriff on the theory of failure to train his officers, plaintiff must establish (1) that there was a failure to adequately train the officers, (2) that the failure to train was the sheriff's policy, i.e., either there was an express policy or

the failure to train amounts to "deliberate indifference" to the rights of persons with whom the officers come into contact, and (3) that the failure to train policy caused the officers to violate plaintiff's constitutional rights. <u>City of Canton v. Harris</u>, 489 U.S. 378, 389-91 (1989); <u>Bruce v. Beary</u>, 498 F.3d 1232 (11th Cir. 2007); <u>Gold</u>, 151 F.3d at 1350. Plaintiff must ultimately present some evidence that the sheriff knew of a need to train in a particular area, and that the municipality made a deliberate choice not to take any action. <u>Gold</u>, 151 F.3d at 1350-51. Deliberate indifference may be established by a pattern of constitutional violations or by a single decision under appropriate circumstances. <u>Bruce</u>, 498 F.3d at 1249.

The Court finds that plaintiff has adequately pled a cause of action for failure to train. Plaintiff has alleged that: (1) the Sherif has a policy of allowing inadequately trained canines to participate in law enforcement activities (Doc. #206, p. 27); "[Other] detainees as well as plaintiff have been bitten by this canine without probable justification." (<u>Id.</u> at p. 28); and (3) the failure to train the canines led to a deprivation of his Fourth and Fourteenth Amendment rights. Therefore, the motion to dismiss is denied on this ground.

Accordingly, it is now

**ORDERED**:

1.   Defendant Fawcett Memorial Hospital's Motion to Dismiss

(Doc. #207) is **GRANTED**.

    2.   Defendants Lister, Merritt, Sheriff Davenport and Savage's Motion to Strike Plaintiff's Second Amended Complaint (Doc. #208) is **DENIED**.

    3.   Defendants Lister, Merritt, Sheriff Davenport and Savage's Motion for More Definite Statement (Doc. #208) is **GRANTED** as to Count II and is otherwise **DENIED**.

    4.   All references to the Fifth, Sixth and Eighth Amendments shall be **stricken** from the Second Amended Complaint (Doc. #206).

    6.   Plaintiff may file a Third Amended Complaint within **TWENTY (20) days** of this Opinion and Order.  If no Third Amended Complaint is filed within the time provided, the case will proceed pursuant to the remaining portions of the Second Amended Complaint. The Court notes that if plaintiff chooses to file a Third Amended Complaint, that will be his last opportunity to do so, as the Court will not grant leave to file a Fourth Amended Complaint.  If plaintiff files a Third Amended Complaint, it shall include all claims against all defendants, since the Third Amended Complaint will become the operative pleading.

    **DONE AND ORDERED** at Fort Myers, Florida, this ___15th___ day of January, 2008.

 

 

_____
JOHN E. STEELE
United States District Judge