UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT W. CRENSHAW,

           Plaintiff,

vs.                                          Case No.   2:03-cv-134-FtM-29SPC

ROBERT LISTER, EMMITT MERRITT,
JOHN DAVENPORT, in his official
capacity, and CHARLOTTE COUNTY
SHERIFF'S OFFICE,

           Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on defendants Lister and Merritt's Motion for Summary Judgment (Doc. #238) filed on April 30, 2008.  Also before the Court is defendant Sheriff Davenport's Motion for Summary Judgment (Doc. #239) filed on April 30, 2008. Plaintiff filed a Response in Opposition to Both Defendants' Motions for Summary Judgment (Doc. #242) on May 16, 2008.

**I.**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the suit under governing law. Id. The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hickson Corp. v. Northern Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, which are sufficient to establish the existence of the essential elements to that party's case, and the elements on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003).

**II.**

The summary judgment facts are as follows: On February 6, 2008, plaintiff, an inmate currently incarcerated in the Florida penal system and proceeding *pro se*, filed a four-count amended

civil rights complaint pursuant to 42 U.S.C. § 1983. (Doc. #214)(the "Third Amended Complaint"). The Third Amended Complaint relates to events that occurred during and subsequent to plaintiff's arrest, but prior to his conviction. Plaintiff names, *inter alia*, defendants Robert Lister, Emmitt Merritt and Rick Chandler, all of whom are Charlotte County Deputy Sheriffs, and Charlotte County Sheriff Davenport.

The Third Amended Complaint recounts that on November 28, 2001, after an armed robbery incident, plaintiff was attacked and bitten thirty-one times by a police canine, under the control of defendant Lister, in his attempt to surrender to the local authorities and as a result suffered injuries. (Doc. #214, pp. 2-3.) Defendant Merritt witnessed the attack but did not intervene. (Id. at p. 15.)

Due to his injuries, plaintiff was transported to Fawcett Memorial Hospital for treatment. Doctors prescribed plaintiff medication, however the sheriff deputies withheld it, and removed him from the hospital prior to all his injuries being treated and transported him to the police station. (Id. at pp. 3-4.) Upon arriving at the police station, plaintiff was interrogated by defendant Chandler. (Id. at p. 111.) During questioning, defendant Chandler punched the plaintiff in the mouth causing plaintiff to bleed. Plaintiff asserts that defendant Chandler violated the CCSO's Use of Force policy.

As a result of his numerous injuries, plaintiff filed a

complaint with internal affairs. (Id. at p. 5.) Sergeant Michael Savage was placed in charge of the investigation and met with plaintiff on January 16, 2001 at the Charlotte County jail. During the meeting, Sergeant Savage informed plaintiff that in light of the pending criminal charges he would not take a statement but would examine the arrest file and paperwork associated with the case. On April 22, 2002, Sergeant Savage found no police misconduct. Plaintiff alleges that the investigation violated the CCSO's policies and procedures. (Doc. #214, pp. 5, 21.)

Plaintiff's four-count Third Amended Complaint asserts that all named defendants violated his Fourth and Fourteenth Amendment rights. Additional facts are set forth below as needed.

### III.

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To establish a claim under § 1983, plaintiff must prove that (1) defendant deprived her of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). Plaintiff also must prove an affirmative causal connection between defendant's conduct and the constitutional deprivation. Marsh v. Butler County, Ala., 268 F.3d 1014, 1059 (11th Cir. 2001) (en banc); Swint v. City of Wadley,

Ala., 51 F.3d 988, 999 (11th Cir. 1995).

## A. Defendant Sheriff Davenport's Motion for Summary Judgment (Doc. #239)

Count IV asserts a claim against the Charlotte County Sheriff's Office (CCSO), which is not a legal entity subject to suit under § 1983. In Florida, a county Sheriff in his official capacity is the proper defendant rather than the County Sheriff's Office. Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992). Therefore the proper party is Sheriff Davenport. The Court will construe Count IV as a claim against Sheriff Davenport in his official capacity and dismiss the CCSO as a defendant.

Count IV is composed of thirty-eight paragraphs asserting in essence claims against Sheriff Davenport for: (1) failing to enforce existing policies; (2) failing to develop policies to ensure that plaintiff's rights are not violated; and (3) failing to properly train and supervise his officers. (Doc. #214, pp. 15-29.)

Sheriff Davenport's motion asserts that the sheriff's office "did not have an official promulgated policy . . . that would authorize the use of unnecessary constitutionally offensive force or mistreatment of detainees. Furthermore, there is no evidence of an unofficial custom, procedure or practice . . . to the contrary." (Doc. #239, p. 6.) Defendant also asserts that Officer Lister was in compliance "with state law regarding maintenance of his certification as a law enforcement officer . . . ." (Id. at p. 8.)

Plaintiff counters that there are issues of material facts

which preclude the entry of summary judgment. Specifically, plaintiff asserts that the issue of whether the Sheriff properly supervised and trained his officers in the use of canines is a jury issue. Plaintiff cites Kerr v. City of West Palm Beach, 875 F.2d 1546 (11th Cir. 1989) in support of his argument.[1] (Doc. #242, p. 4.) Plaintiff also asserts that it would be improper for the Court to enter summary judgment in favor of the Sheriff because there are outstanding discovery issues, including the sheriff's failure to produce "arrest records made by K-9 units in Charlotte County Florida for the past ten (10) years." (Id. at p. 5.)

**(1)**

Under § 1983, a governmental entity may not be held liable under a theory of *respondeat* superior, but instead may only be held liable when its "official policy" causes a constitutional violation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. Grech v. Clayton County, Ga., 335 F.3d 1326, 1320-30 (11th Cir. 2003). Plaintiff must identify the policy or custom which caused his

---

[1] In Kerr v. West Palm Beach, 875 F.2d 1546, 1157 (11th Cir. 1989), the Eleventh Circuit found that the issue of whether the police chief inadequately trained and supervised the canine unit was a jury question and that the district court improperly granted judgment notwithstanding the verdict on that issue.

injury so that liability will not be based upon an isolated incident, McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004)(citations omitted), and the policy or custom must be the moving force of the constitutional violation. Grech, 335 F.3d at 1330. See also Board of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

It is undisputed that the CCSO has written policies on training, use of force, canine usage and training, criminal apprehension, internal investigations and discipline.[2] (Docs. ## 214-5; 239-3.) The evidence is clear that none of the written policies were the moving force of plaintiff's injuries. For example, the written policy on use of force and the use of canines do not show a deliberate indifference to plaintiff's constitutional rights, but quite the contrary show an explicit attempt to comply with constitutional mandates as they provide in relevant part that:

> Use of K-9s during an apprehension will be classified as an application of force;
>
> . . .
>
> [An officer] is empowered by State Statutes to use that amount of force which is deemed reasonable and necessary to defend himself/herself . . . from bodily harm while making an arrest, or during an act of aggression from a subject.

---

[2]The Court notes that contrary to plaintiff's assertion that there is no policy or procedure relating to interrogations (Doc. #214, ¶72), the Sheriff's office does indeed have such a policy (Doc. #239-3, pp. 22-23).

-7-

> . . .
>
> [Officers] may use only that amount of defensive action which is reasonably necessary to effect lawful objectives. (Doc. #239-3, pp. 9, 13.)

The Affidavit of Accreditation Supervisor Christine Goracke reiterates the existence of the policies and states that when it is established that an officer has violated policy or procedure, that individual "is subjected to appropriate disciplinary sanctions, to include, termination." (Doc. #239-2, p. 3.)

Plaintiff also asserts that the sheriff's office has a custom of violating existing policies. For example, plaintiff asserts that the Sheriff's office has the following customs: (1) failure to provide adequate medical attention for all injuries (Doc. #214, ¶73); (2) allowing police canine dogs to maul suspects after a suspect has requested an officer to stop the "brutality" (see id. at ¶75); and (3) not enforcing the use of force policy and thus allowing officers to "do as they please with no repercussions" (see id. at ¶76). The Court finds that these assertions cannot form the basis of a § 1983 claim as plaintiff has shown nothing more than isolated incidents of policy violations.[3] In order to hold Sheriff Davenport liable under section 1983, plaintiff must demonstrate "a persistent and widespread practice," which he has failed to show.

---

[3] The Court notes that "proof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional [] policy . . .." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985).

Depew v. St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986). Plaintiff's assertion that "there still exist discovery that should be conducted" (Doc. #242, p. 5) is without merit. The discovery deadline expired on October 1, 2007. (Doc. #193, p. 2.) At no time did plaintiff seek an extension of that deadline, which the Court notes had been previously extended numerous times. Furthermore, the Court notes that defendants filed a Notice of Compliance as to the Court's Order directing defendants to produce Officer Lister's "arrest records that resulted in a K-9 injury" and "a copy of Robert Lister's K-9 with K-9 Eddie. Any documents that show supervision, training . . . . A copy of K-9 Eddies discharge from duty and reasons for his discharge." (Docs. ## 200-2; 202.) Plaintiff did not file any additional motions to compel subsequent to the Notice of Compliance (Doc. #205). Therefore, the Court finds that based on the record, there are no outstanding discovery issues and that summary judgment in favor of the Sheriff is appropriate because there was no policy, custom or procedure which was the moving force behind plaintiff's injuries.

**(2)**

Plaintiff also asserts that the Sheriff failed to properly supervise and train his employees. (Doc. #214, ¶ 60.) The sheriff is not automatically liable under § 1983 even if he inadequately trained or supervised his officers and those officers violated plaintiff constitutional rights. See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998). To establish a claim against the

sheriff on the theory of failure to train his officers, plaintiff must establish (1) that there was a failure to adequately train the officers, (2) that the failure to train was the sheriff's policy, i.e., either there was an express policy or the failure to train amounts to "deliberate indifference" to the rights of persons with whom the officers come into contact, and (3) that the failure to train policy caused the officers to violate plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 378, 389-91 (1989); Bruce v. Beary, 498 F.3d 1232 (11th Cir. 2007); Gold, 151 F.3d at 1350. Plaintiff must ultimately present some evidence that the sheriff knew of a need to train in a particular area, and that he made a deliberate choice not to take any action. Gold, 151 F.3d at 1350-51. Deliberate indifference may be established by a pattern of constitutional violations or by a single decision under appropriate circumstances. Bruce, 498 F.3d at 1249.

Plaintiff's assertions in the Third Amended Complaint that defendant Lister and canine Eddie were improperly trained are refuted by the record evidence. The Sheriff's office has policies in place dictating the amount of training required by canines and their handlers such as Officer Lister and canine Eddie. (Doc. #239-3, pp. 2, 8, 10.) This is supported by Captain Wayne Nieberg's affidavit which states in relevant part that:

> The Charlotte County Sheriff's Office K9 Unit only utilized personnel and K9s that were rigorously trained in accordance with our policy . . . . Deputy Robert

>    Lister and K9 Eddy were trained and certified in accordance with these standards. (Doc. #239-4, ¶¶ 3-4.)

Plaintiff has not provided any evidence refuting the affidavit, or establishing deliberate indifference on the part of the Sheriff in supervising and training his deputies. The only two arguments presented by plaintiff are that there are disputed issues of material facts and that discovery is not complete. (Doc. #242, pp. 3-4.) The Court disagrees. As stated earlier, the record indicates that the discovery period closed over seven months ago and plaintiff has not presented any evidence creating genuine issues of material facts. Furthermore, even if Officer Lister and his canine were inadequately trained, plaintiff has not provided any evidence showing that Sheriff Davenport knew of the need to provide them additional training. Therefore, Sheriff Davenport's Motion for Summary Judgment is granted.

**B.   Defendants Lister and Merritt's Motion for Summary Judgment (Doc. #238)**

Counts I and III of the Third Amended Complaint allege that Officers Lister and Merritt are liable for utilizing excessive force in apprehending plaintiff. The Officers seek summary judgment as to the excessive force counts. The individual officers assert they are entitled to qualified immunity; additionally, Officer Merritt argues that even if Officer Lister used excessive force that he was in no position to intervene, and therefore cannot be held liable.

The Court's first step is to identify the source of the constitutional right to be free of excessive force. Defendants argue that the excessive force claim must be analyzed under the Fourth Amendment reasonableness standard. (Doc. #238, p. 7.) Plaintiff Third Amended Complaint cites the Fourth and Fourteenth Amendments as the basis for his excessive force counts (Doc. #214, pp. 6, 10, 13, 15), however, his Response asserts that the excessive force counts should be analyzed only under the Fourth Amendment (Doc. #242, p. 3).

The Court agrees with the parties that plaintiff's excessive force claims against Officers Lister and Merritt should be analyzed under the Fourth Amendment. The Eleventh Circuit has ruled that "[i]n an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's objective reasonableness standard." Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008); Reese v. Herbert, 527 F.3d 1253, 1262 n.11 (11th Cir. 2008). Under a Fourth Amendment standard, the issue is whether the officer's conduct was objectively reasonable in light of the facts confronting the officer. Graham, 490 U.S. at 396-97. The use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, keeping in mind that the right to make an arrest carries with it the right to use some degree of physical force or the threat of force. This requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the countervailing governmental interests at stake. This in turn requires a court to evaluate the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether the suspect is actively resisting or attempting to flee, the need for the application of force, the extent of the injury inflicted, and whether the force used was reasonably proportionate to the need for the force. See Beshers v. Harrison, 495 F.3d 1260, 1266-68 (11th Cir. 2007); Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir. 2002).

**1.  Officer Lister Individually and Canine Eddie (Count I)**

The facts known to defendant Lister at the time of the use of force were that plaintiff was suspected of armed robbery and had crashed his vehicle into a patrol car and was now fleeing on foot in a heavily wooded area near a canal. In addition, according to the Third Amended Complaint, Officer Lister never lost sight of plaintiff and upon becoming aware of the presence of a police canine, plaintiff informed him that he wished to surrender and relayed his position. (Doc. #214, ¶¶ 8, 10-11, 27.) The Court recognizes that this version of the events is only from plaintiff's perspective and is likely to be disputed. However, at this stage of the proceedings, the Court is required to view any disputed facts in the light most favorable to the plaintiff.

With those facts, the Court finds that plaintiff's excessive force claim against defendant Lister survives the motion for

summary judgment. In applying the Fourth Amendment balancing test, the Court finds that a reasonable jury could find that the severity of the injuries incurred by plaintiff were excessive in light of the circumstances of the apprehension. While a certain amount of force was necessary, in light of Officer Lister's reasonable belief that Crenshaw was armed, a reasonable jury could find that allowing the canine to bite plaintiff thirty-one different times was excessive. Furthermore, the Court notes, there is a disputed issue of material fact as to whether Officer Lister encountered any resistance from plaintiff in handcuffing him. Officer Lister's report states that "I told him to give me his hands. He did not immediately give up his hands. I grabbed the suspects right hand." (Doc. #214-3, p. 2.) Whereas plaintiff asserts that he did not disobey Officer Lister. (Doc. #242, p. 2.) The level of resistance directly impacts the analysis of whether excessive force was used. Therefore summary judgment is denied as to Officer Lister.

### 2. Officer Merritt Individually (Count III)

The facts are undisputed that while Officer Merritt was present at the scene of plaintiff's apprehension, he did not participate in the struggle between plaintiff and Officer Lister. Plaintiff asserts that Officer Merritt is liable because he had a duty to intervene and prevent Officer Lister from utilizing excessive force. Plaintiff also asserts that Officer Merritt violated departmental policies. (Doc. #214, pp. 13-14.)

"An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007)(quotation omitted); Priester v. City of Riviera Beach, 208 F.3d 919, 927 (11th Cir. 2000). "This liability, however, only arises when the officer is in a position to intervene and fails to do so." Ensley v. Soper, 142 F.3d 1402, 1407 (11th Cir. 1998).

As a preliminary matter, the Court notes that Officer Merritt cannot be liable for failing to intervene if Officer Lister is found not to have used excessive force in apprehending plaintiff. However, the Court is required to view the facts in the light most favorable to plaintiff and thus assumes that Officer Lister utilized excessive force. There is no dispute that plaintiff was hiding in a heavily wooded area. Officer Merritt's report states that he was unable to assist Officer Lister in securing plaintiff "due to the [plaintiff] being covered up in thick brush." (Doc. #214-3, p. 4.) Plaintiff counters that Officer Merritt was indeed in a position to assist Officer Lister. (Doc. #242, pp. 3-4.) The Court finds that there is a genuine issue of material fact as to whether Officer Merritt was in a position to intervene. Therefore, the motion for summary judgment is denied as to Officer Merritt.

### 3. Qualified Immunity

The Court now turns to the issue of whether Officers Merritt and Lister are entitled to qualified immunity. The qualified

immunity principles are well settled.  Qualified immunity offers complete protection for government officials sued in their individual capacities "as long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known."  Sharp v. Fisher, ___ F.3d ___, 2008 WL 2600007, *2 (11th Cir. July 2, 2008)(internal quotations omitted).  "An official seeking qualified immunity must initially establish that he was acting within his discretionary authority.  If the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff." McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007).  There is no dispute that both officers were acting within their discretionary authority, under color of state law, at the time of plaintiff's arrest.

To defeat defendants' claim of qualified immunity, plaintiff must establish two elements.  Plaintiff must first show that the facts, taken in the light most favorable to him, establish that under present-day law the officers' conduct violated a constitutional right, in this case plaintiff's Fourth Amendment right to be free from excessive force in the course of an arrest. If so, plaintiff must show that the constitutional right at issue was clearly established, i.e., that it would have been clear to a reasonable officer that the conduct was unlawful. Saucier v. Katz, 533 U.S. 194, 201-02 (2001); Reese, 527 F.3d at 1271; Sharp, 2008 WL 2600007 at *2.

As stated earlier, the Court finds that a reasonable jury could find that both Officers Lister and Merritt violated plaintiff's Fourth Amendment Rights. Under plaintiff's version of the facts, the Court concludes that no reasonable officer could have believed that the amount of force utilized by Officer Lister was reasonable. Despite lying on the ground, and having affirmatively expressed his intent to surrender and not resisting Officer Lister, plaintiff was repeatedly bitten by Officer Lister's canine, resulting in thirty-one puncture wounds to both legs, including one "3.5 cm laceration" to his left leg. (Doc. #214-4, p. 3.) From the perspective of a reasonable officer, plaintiff could have been subdued with much less force and without the need to severely injure him. Therefore, the Court finds that neither Officer Lister nor Officer Merritt are entitled to qualified immunity, and thus denies summary judgment on Counts One and Three of the Third Amended Complaint.

Accordingly, it is now

**ORDERED:**

1.  Defendants Lister and Merritt's Motion for Summary Judgment (Doc. #238) is **DENIED.**

2.  Defendant Sheriff Davenport's Motion for Summary Judgment (Doc. #239) is **GRANTED.** The Clerk shall withhold the entry of judgment.

3.  The Clerk is directed to terminate defendants Sheriff

Davenport and the Charlotte County Sheriff's Office on the docket.

**DONE AND ORDERED** at Fort Myers, Florida, this ___15th___ day of July, 2008.

```
                                      /s/ John E. Steele
                                      _____
                                      JOHN E. STEELE
                                      United States District Judge
```

Copies:
Parties of record